UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-07-64-M |
| | ) | |
| DAVID TROY | ) | |

### ORDER ON DEFENDANT'S MOTIONS

Just before trial on the charge of assaulting two federal officers, David Wong Troy, though represented by counsel, acted *pro se* in raising a number of claims of legal error. The Court addresses and denies each contention.

### I.    STATEMENT OF FACTS

After a one day jury trial, David Wong Troy was convicted of knowingly and forcibly assaulting, resisting, opposing, impeding, and interfering with a United States Customs and Border Protection Officer, while she was engaged in her official duties, a violation of 18 U.S.C. § 111(a).[1] *Verdict* (Docket # 36). Outside the presence of the jury, at the outset of trial and without the assistance of his defense attorney, but in his presence, Mr. Troy raised a host of objections to the proceedings.

First, he claimed that 134 consecutive days had run from November 27, 2007 to April 9, 2008, and this delay violated his right to a speedy trial under both the Speedy Trial Act (STA) and the Sixth Amendment, thereby entitling him to a dismissal of the charges. To support his contention, Mr. Troy said that the case had previously been postponed because of the unavailability of a jury and that court congestion is not a valid reason for violating the STA and his constitutional rights. Second, he said that the prosecution failed to file a "statement of

---

[1] The jury found Mr. Troy not guilty of a second count, alleging a violation of the same statute against another officer. *Verdict*.

readiness," thereby authorizing the imposition of sanctions.  To support his argument, he cited cases from the state of New York.  Third, he claimed that his attorney moved to continue the case without his consent and over his objection and thus violated his right to appear in court, making the continuances invalid.  Fourth, he claimed that the "master copy" of the United States Constitution, which he personally viewed at the Smithsonian Institution in Washington, D.C., contains a clause not found in the shorter version of the Constitution that appears in most law books, and specifies that a person accused of a misdemeanor must go to trial within ninety days. Fifth, he asserted that the Government violated its discovery obligations by failing or refusing to turn over an uncut version of 8.5 hours of video of the United States Customs and Border Protection Office, where the altercation took place.  Sixth, he argued that each of the ten individuals whose images appear on the video must testify in order for it to be admissible, and the Government's failure to have all ten witnesses present and ready to testify on April 9, 2008, was fatal to its case.  Seventh, he said that because the jury pool contained no people of Asian descent and because he is of Asian descent, the jury selection process was flawed.  Eighth, he asserted that the defense should not be required to rely on the Government's representation as to the criminal records of the officers at the port of entry.  Finally, he contended that the video viewing equipment in the courtroom violated his right to a public trial, because the viewing screens were not big enough.[2]

## II.    DISCUSSION

### A.    Delay of Trial

#### 1.    The Docket Entries

---

[2] On April 11, 2007, on the day of trial, Mr. Troy read and submitted a letter outlining his arguments.  On April 17, 2008, Mr. Troy filed a second letter, which he characterized as an addendum.  *Letter* (Docket # 38).  On June 4, 2008, Mr. Troy filed a third letter in which he clarified that there was a typographical error in his earlier submission concerning the date of the incident.  He noted that the relevant date was not November 27, 2008, but was November 27, 2007.  *Am. Letter* (Docket # 39).

Mr. Troy was arrested immediately after the November 27, 2007 altercation at the Customs Office in Calais, Maine. The Government filed a criminal complaint on November 28, 2007, and Mr. Troy was arraigned later that day. *Compl.* (Docket # 1); *Minute Entry* (Docket # 6). On December 12, 2007, as the Defendant did not consent to trial before the Magistrate Judge, the case was ordered placed on the first available jury trial list scheduled more than thirty days after the initial arraignment date of November 28, 2007. *Order* (Docket # 9).

On December 13, 2007, the case was placed on the jury trial list for January 2008, with jury selection to occur on January 8, 2008. *Trial List* (Docket # 10). On December 28, 2007, the Defendant moved to continue the trial on the ground that defense counsel had "recently received funds for investigation which must be completed for adequate defense in this matter. Such investigation will not be completed by the currently scheduled trial date." *Def.'s Mot. to Continue* (Docket # 15). The Court granted the Defendant's motion on the same day. *Order* (Docket # 16).

On January 2, 2008, the case was again set for trial; this time for the February term of court with jury selection on February 5, 2008. *Trial List* (Docket # 17). Again, the Defendant moved to continue trial, claiming that additional time was necessary for his private investigator to complete his investigation. *Def.'s Mot. to Continue* (Docket # 18). The Court granted this motion on January 28, 2008. *Order* (Docket # 19). On January 28, 2008, the case was set for trial for the March term, with jury selection for March 4, 2008, and on February 26, 2008, jury selection was reset for a final time to April 9, 2008. *Trial List* (Docket # 20); *Notice of Hr'g* (Docket # 21); *Trial List* (Docket # 23). Jury selection proceeded on April 9, 2008, and the case was tried before a jury on April 11, 2008. *Minute Entries* (Docket # 32, 33).

## 2.      Speedy Trial Act – 18 U.S.C. §§  3161-3174

Mr. Troy was charged with a violation of 18 U.S.C. § 111(a), a Class A misdemeanor.
18 U.S.C. § 111(a) ("Whoever forcibly assaults, resists, opposes, impedes, intimidates, or
interferes with any person designated in [18 U.S.C. § 1114] while engaged in or on account of
the performance of official duties . . . shall . . . be . . . imprisoned not more than one year . . . .");
18 U.S.C. § 3581(b)(6).  As such, the provisions of the Speedy Trial Act apply.  *See United
States v. Sued-Jimenez*, 275 F.3d 1, 8 (1st Cir. 2001) (noting that the "Speedy Trial Act . . . only
applies to defendants charged with an 'offense,' which is defined as 'any Federal criminal
offense which is in violation of any Act of Congress and is triable by a court established by Act
of Congress (other than a Class B or C misdemeanor . . . .'") (quoting 18 U.S.C. § 3172(2)).

The STA provides:

> [W]hen a defendant pleads not guilty to "the commission of an offense," the trial
> must occur within seventy days from the date the information or indictment was
> filed, or from the date the defendant appeared before the court where the charge is
> pending, whichever is later.  If the Act is violated, the charges will be dismissed
> on defendant's motion for failure to comply with this time table.  (citing 18
> U.S.C. §§ 3161(c)(1), 3162(a)(2)).

*Id.*  Although the STA applies to Mr. Troy's case, the periods during which the trial was delayed
were due to the Defendant's motions to continue trial, and are therefore excluded from the STA
calculations.  18 U.S.C. § 3161(h)(8)(A) ("The following periods of delay shall be excluded in
computing the time within which an information or an indictment must be filed, or in computing
the time within which the trial of any such offense must commence: . . . 8(A) Any period of
delay resulting from a continuance granted by any judge . . . at the request of the defendant or his
counsel[,] . . . if the judge granted such continuance on the basis of his findings that the ends of
justice served by taking such action outweigh the best interest of the public and the defendant in
a speedy trial.").  Here, the case was scheduled for trial with jury selection set for January 8,

4

2008, when the Defendant asked the Court to set the matter ahead to allow him to complete the investigation.  Having sought and been granted further time to investigate and defend the case, Mr. Troy is in no position to complain about the delay that he occasioned and that was for his benefit.[3]  *See United States v. Barnes,* 159 F.3d 4, 14 (1st Cir. 1998) (stating that a defendant "cannot 'lull[] the court and prosecution into a false sense of security only to turn around later and use the waiver-induced leisurely pace of the case as grounds for dismissal'" (quoting *United States v. Pringle*, 751 F.2d 419, 434 (1st Cir. 1984)).  Further, Mr. Troy is simply incorrect in his assumption that a jury would not have been available if he had chosen to go to trial earlier.  As the docket entries reveal, the Court was prepared to try the matter both in January and in February, and it did try the case in April.

Nor may Mr. Troy be heard to complain on this record that his attorney filed these motions without his consent.[4]  A defense attorney has a general duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland v. Washington*, 466 U.S. 668, 691 (1984).  By requesting a continuance for further investigation, Mr. Troy's attorney satisfied the duty outlined in *Strickland*.  In addition, "[a]n attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy.  That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision."  *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal citation omitted).  In *Nixon*, the Court concluded that "[a] defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.  Concerning those decisions, an attorney must

---

[3] In addition, Mr. Troy waited until after the start of the trial to move for dismissal.  "Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."  18 U.S.C. § 3162(a)(2).
[4] Mr. Troy claimed his attorney did not inform him of the motions to continue and did not obtain his consent.

5

both consult the defendant and obtain consent to the recommended course of action." *Id.* (internal citation omitted). While these basic rights cannot be waived by an attorney without the informed consent of the client, "the lawyer has -- and must have -- full authority to manage the conduct of the trial. As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *New York v. Hill*, 528 U.S. 110, 114-15 (2000) (internal citation omitted).

In *Hill*, the Supreme Court addressed the question "whether defense counsel's agreement to a trial date outside the time period required by Article III of the Interstate Agreement on Detainers bars the defendant from seeking dismissal because trial did not occur within that period."[5] *Id.* at 111. The Court concluded that defense counsel's agreement "to a trial date outside the [statutory time period] bars the defendant from seeking dismissal on the ground that trial did not occur within that period." *Id.* at 110. Specifically, the Court observed that "[s]cheduling matters are plainly among those for which agreement by counsel generally controls." *Id.* at 115. Both the Interstate Agreement on Detainers (IAD) and the STA contain statutory language that "contemplates that scheduling questions may be left to counsel." *Id.* (See Article III(a) of the IAD which provides that a court is allowed to issue a "good cause continuance" when either "prisoner *or his counsel*" is present; similarly, the statutory language of the STA expressly provides that the motion to continue may be "at the request of the defendant *or his counsel* . . . ." 18 U.S.C. § 3161(h)(8)(A) (emphasis added)).

---

[5] The Court in *Hill* noted certain differences between the STA and the IAD, and stated "we express no view on the subject" of the STA. *Id.* at 118 n.2.

The First Circuit has stated "there is nothing in section 3161(h)(8)(A) requiring that a hearing must be held before a motion for continuance is granted." *United States v. Mitchell*, 723 F.2d 1040, 1043 (1st Cir. 1983). In *Mitchell*, the Court wrote:

> There may be times . . . when the reasons for granting the continuance are so clear that no hearing is necessary. Under such circumstances, the court would be furthering the purposes of the Speedy Trial Act by eliminating the delay, excludable under section 3161(h)(1)(F), inherent in the time required for notice and hearing.

*Id.* at 1044.

In sum, Mr. Troy's attorney's requests for continuances were tactical decisions, made for Mr. Troy's benefit, to prepare his defense. To require a defendant's consent to request a continuance would have significant practical effects: "The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). In addition, absent unusual circumstances not present here, the continuance does not rise to the level of such a basic and fundamental right as would require Mr. Troy's consent.[6]

### 3.    Sixth Amendment Claim

In addition to the statutory right to a speedy trial, Mr. Troy raises a Sixth Amendment speedy trial claim. *See United States v. Herman,* 576 F.2d 1139, 1145 n.3 (5th Cir. 1978) ("Compliance with the Speedy Trial Act does not work as a bar to a Sixth Amendment claim . . . ."); 18 U.S.C. § 3173 ("No provision of this chapter [the STA] shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution."). The Sixth

---

[6] Rule 43 supports this conclusion. It provides that a defendant is entitled to be present at certain critical proceedings, but expressly states that a defendant need not be present when "[t]he proceeding involves only a conference or hearing on a question of law." Fed. R. Crim. P. 43(b)(3). The Fifth Circuit concluded that granting a continuance outside the defendant's presence fell within "Rule 43(c)(3), and even if it had not, the action in no way prejudiced [the Defendant]." *United States v. Killain*, 639 F.2d 206, 209-10 (5th Cir. 1981) (Rule 43(c)(3) has since been renumbered and is now Rule 43(b)(3)).

Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI.

To assess a Sixth Amendment claim, the United States Supreme Court has established a four-part balancing test:  "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant caused by the delay." *United States v. Munoz-Franco*, 487 F.3d 25, 60 (1st Cir. 2007) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  In *Munoz-Franco*, the Court "identified the first factor, the length of the delay, as 'to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Id.* (quoting *Barker*, 407 U.S. at 530).  The Supreme Court has stated "that post-accusation delay approaching one year is presumptively prejudicial." *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

In this case, the delay was significantly less than one year, arguably mooting the other three factors.  However, in an excess of caution, the Court will briefly analyze the remaining factors, each of which cuts against Mr. Troy's Sixth Amendment claim.  First, the reasons for the delay through February were entirely attributable to the Defendant.  Second, Mr. Troy asserted his right to a speedy trial at the last possible minute on the morning of his trial.  Third, there is no discernable prejudice to the Defendant caused by the delay – Mr. Troy was not being detained prior to trial, and the fact that he was acquitted of one of the two counts indicates that the additional time and effort spent by his attorney preparing his defense may have benefitted Mr. Troy.  In summary, applying the *Barker* four-part balancing test to the facts of this case reveals the total absence of a Sixth Amendment violation.

### 4.       Alternate Version of the Constitution

The Court is nonplussed by the notion that there is a "master copy" of the United States Constitution different than the Constitution that has been the guiding document of the United States Government and has formed the basis of judicial decision-making for more than two hundred years.  The version of the Constitution the Court must apply to this case contains the Sixth Amendment, which provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. amend. VI.  The United States Constitution contains no provision that establishes a ninety-day speedy trial time limit for misdemeanors.

### 5.       Statement of Readiness to Proceed

In the state of New York, there is a statute that requires the prosecution be "ready for the trial" of a felony within six months.  N.Y. Crim. Proc. Law § 30.30(1)(a).  Mr. Troy cites two New York cases that discuss this requirement.  *People v. Chavis*, 695 N.E.2d 1110, 1112 (Ct. App. N.Y. 1998); *People v. Smith*, 619 N.E.2d 403, 404 (Ct. App. N.Y. 1993).  New York courts have interpreted "ready for trial" to be comprised of two elements:  "(i) either a statement of readiness by the prosecutor in open court, transcribed by a stenographer, or recorded by the clerk or a written notice of readiness sent by the prosecutor to both defense counsel and the appropriate court clerk and (ii) the People must in fact be ready to proceed at the time they declare readiness."  *Chavis*, 695 N.E.2d at 1112 (internal punctuation and citation omitted); *Smith*, 619 N.E.2d at 404 (similar language).

Mr. Troy assumes that because there is a statutory readiness for trial requirement in the state of New York, the same rule must apply in federal court.  *Letter* at 1 ("While these references are from NY precedent and cases, they are still applicable as precedent and principles

of law to all levels of courts and laws throughout the U.S.A. and hence these NY precedents are applicable in this case with docket # 07-mj-64-B-W.").  He is wrong.  Statutes specifying procedures for compliance with the New York state speedy trial act and New York case law interpreting those provisions do not apply to cases pending before the United States District Court in the District of Maine.  Federal law does not have an analogue to New York's "statement of readiness."[7]

### B.    Discovery Violation – The Videos

Mr. Troy's discovery violation claim is frivolous.  The video admitted into evidence and played at trial was from security cameras at the Calais port of entry and depicted Mr. Troy entering the building and the altercation that ensued.  To demand that the Government provide the videos from the security cameras for 8.5 hours preceding the incident simply makes no sense.  Mr. Troy did not explain why additional videos from security cameras depicting countless other people coming and going from the Calais port of entry during the hours before the altercation would have any bearing on whether he committed an assault when he arrived at the office.

### C.    Admissibility of the Video

Mr. Troy's contention that to admit the video into evidence the Government must present the testimony of all ten people depicted on the video is also frivolous.  Mr. Troy made no specific evidentiary objection to the admission of the video, and, in any event, he waived the argument.  During trial, the parties stipulated that the video from the security cameras was admissible without further evidence of foundation or authentication.

### D.    Jury Selection Process

---

[7] New York law also excludes the following delay when computing the six month time limit:  "the period of delay resulting from a continuance granted by the court at the request of . . . the defendant or his counsel."  N.Y. Crim. Proc. Law § 30.30(4)(b).

The Court construes Mr. Troy's argument about the absence of potential jurors of Asian descent to be a "fair cross section" argument under the Sixth Amendment and the Jury Selection and Service Act. *See* U.S. Const. amend. VI; 28 U.S.C. § 1861; *United States v. Lara*, 181 F.3d 183, 191-92 (1st Cir. 1999). To successfully argue this point, Mr. Troy must make:

> [A] tripartite showing comprising cognizability (i.e., that the group alleged to be excluded is a distinctive group), underrepresentation (i.e., that the group is not fairly and reasonably represented in the venires from which juries are selected), and systematic exclusion (i.e., that the discerned underrepresentation is due to the group's systematic exclusion from the jury-selection process).

*Lara*, 181 F.3d at 191-92. Assuming that the general category of "Asian" constitutes a "distinctive group," Mr. Troy has made no showing of the second and third parts of the three part test. There is no evidence that the jury pool in this case was "not fairly and reasonably represented in the venires from which the jury was selected" and no evidence that "the discerned underrepresentation is due to the group's systematic exclusion from the jury selection process." *Id.*

### E.      Criminal Records of the Officers

Mr. Troy asserted that the Government required him to rely on its own representations concerning the criminal histories of the border agents it called as witnesses at trial. Other than Mr. Troy's statement, there is no evidence on this point in the record – for example: how the discovery information was provided by the Government, what it said, whether the Defendant objected and requested verification, or what the Government's response was – in short, Mr. Troy has failed to provide a sufficient record to rule on the issue.

### F.      Video Viewing Equipment

Mr. Troy contended that the courtroom's video viewing equipment was too small, so much so that he was deprived of a public trial. The Court rejects this contention. The same

video viewing equipment in the courtroom has been used without complaint by parties in countless criminal trials.  Here, the parties used the video viewing equipment to show the surveillance videotapes to the jury, and during its deliberations, the jury requested that the video be shown again.  The jury members were clearly able to see what the surveillance cameras revealed about the incident and there is no basis to conclude that the jury could not adequately view the video or that unnamed members of the public could not do so.  Mr. Troy himself had a monitor at defense table and he and his counsel were able to watch the video.

## III.   CONCLUSION

The Court overrules each of David Wong Troy's objections.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of July, 2008